**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard and Maria Shupe, <br><br> Plaintiffs, <br><br> vs. <br><br> Bank of America, National Association, <br><br> Defendant. | CV 13-019-TUC-JGZ (JR) <br><br> REPORT & RECOMMENDATION |

Pending before the Court is a Motion for Summary Judgment filed by Defendant Bank of America, National Association ("BANA") (Doc. 129). Plaintiffs Richard and Maria Shupe ("Plaintiffs" when referred to collectively) filed a Response (Doc. 162), and BANA has replied (Doc. 171). For the reasons explained below, the Magistrate Judge recommends that the District Court, after conducting an independent review of the record, grant the motion.

## I. Procedural Background

The Court's jurisdiction over this action arises from the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. *See Mims v. Arrow Financial Services, LLC*, -- U.S. --, 132 S.Ct. 740 (2012). In the original complaint, in addition to claims made under the TCPA, the Plaintiffs alleged claims for invasion of privacy, harassment, intentional infliction of emotional and physical distress, and claimed that the Defendant violated A.R.S. § 44-1282, which prohibits certain intrastate telemarketing solicitations (Doc. 1). The complaint alleged that the Defendant ignored the Plaintiffs' notices not to call their residential telephone number by using predictive dialing systems to call them on more than 50 occasions. On March 4, 2013, the Plaintiffs withdrew their claims for harassment and intentional infliction of emotional and physical distress (Doc. 19).

On April 9, 2014, the Plaintiffs filed a Motion to Leave to File an Amended Complaint to add a negligence claim (Doc. 80). The Magistrate Judge recommended that the motion be denied (Doc. 105). The recommendation was adopted by the District Court (Doc. 119).

## II. Factual Background

It is undisputed that between August 1 and November 25, 2011, BANA made between 48 and 56 calls to 520-xxx-6400 ("the 6400 number"), which was then the Plaintiffs' residential telephone number. *Defendant's Statement of Facts* ("*DSOF*"), ¶¶ 8-9; *Plaintiffs' Opposition Statement of Facts* ("*POSF*"), ¶¶ 3-4. Plaintiffs have both a mortgage and credit card with BANA. *DSOF* ¶¶ 3-4; *POSF*, ¶¶ 3-4.

However, BANA contends that the calls in question were not associated with the Plaintiffs' accounts, but were intended for a third party, Jose Ascension Sontoyo, who had a mortgage provided by BANA. *DSOF,* ¶ 5. BANA alleges that the calls were made to the 6400 number because Mr. Sontoyo had provided that number as his work telephone number on his 2006 mortgage application. *DSOF*, ¶ 5. When his mortgage went into default, BANA attempted to contact him at the 6400. However, sometime in 2010, the Plaintiffs acquired the 6400 number. *DSOF*, ¶ 7; *POSF*, ¶ 7. BANA admits that most of the calls were made using auto-dialing technology, but that the calls did not employ an "artificial or prerecorded voice." *DSOF*, ¶ 12.

**III.    Motion for Summary Judgment**

BANA moves summary judgment on the Plaintiffs' claims for (1) violation of the TCPA; (2) violation of A.R.S. § 44-1282; and (3) invasion of privacy. BANA argues that (1) the calls it made to the Plaintiffs did not violate the TCPA because they were not telemarketing calls and were not made using an "artificial or prerecorded voice; (2) because the calls did not violate the TCPA, they are not unlawful under A.R.S. § 44-1282; and (3) the Plaintiffs have failed to produce evidence supporting their invasion of privacy claim.

**A.    Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is not

3

proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 318, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). A party cannot defeat summary judgment by producing a "mere scintilla of evidence to support its case." *City of Vernon v. Southern Cal. Edison Co.*, 955 F.2d 1361, 1369 (9th Cir. 1992).

**B.  TCPA Claim**

The TCPA is intended to ban specific categories of telephone calls that Congress has found to be intrusive and invasive of privacy. *Mims v. Arrow Financial Services, LLC*, 132 S.Ct. 740, 743 (2012). One category of calls that is prohibited by the Act is the use of artificial or prerecorded voice messages to call residential telephone lines without prior express consent. 47 U.S.C. § 227(b)(1)(B). BANA contends that the Plaintiffs have never alleged that the calls employed an

1  artificial or prerecorded voice and, therefore, they cannot state a claim under the
2  TCPA.

3  In their response, the Plaintiffs contend that BANA called them "using a
4  Predictive/ATDS dialing system; in some instances using a prerecorded voice." Doc.
5  162, p. 23.  In support of their contention that BANA used a prerecorded voice, the
6  Plaintiffs submit a joint affidavit stating that "BANA called our home using ATDS of
7  which some calls included a prerecorded message." *Affidavits of Richard and Maria*
8  *Shupe*, Doc. 162, p. 55, ¶ a.  BANA argues that the Plaintiffs' affidavit substantially
9  supplements their deposition testimony and should be disregarded.  As BANA
10 contends, a party cannot substitute an affidavit offering helpful facts that are
11 contradicted or omitted from earlier deposition testimony in order to avoid summary
12 judgment.  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255,
13 1264 (9th Cir. 1993) (citing *Foster v. Arcata Assocs., Inc.*, 772 F.2d 1453, 1462 (9th
14 Cir. 1985) and *Radobenko v. Automated Equipment Corp.*, 520 F.2d 540, 544 (9th
15 Cir. 1975).)  However, such an affidavit can be rejected as a "sham" only after the
16 Court makes a finding of fact that it was generated solely for the purpose of creating
17 an issue of material fact in order to defeat a motion for summary judgment.  *Id*.

18 Upon comparing Richard Shupe's deposition and affidavit testimony, the
19 Court finds that the affidavit was manufactured by Mr. Shupe in an effort to
20 supplement his previous testimony and avoid summary judgment.  *Kennedy v. Allied*
21 *Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991).  The newly-drafted affidavit is
22 devoid of any specific information such as dates of the alleged prerecorded calls or a

description of their content. And more important, as BANA notes, the Plaintiffs' contention that any of the calls made by BANA were prerecorded appears for the first time in their response to BANA's motion for summary judgment. This recent allegation contradicts Mr. Shupe's deposition testimony where he said that he spoke with someone from BANA when they first called and that in "each subsequent call thereafter, as soon as they started their marketing, we hung up." *DSOF*, Ex. A, p. 37:19-25. Mr. Shupe further explained that the "conversations were never extensive. As soon as she started marketing to me, I told her not to call." *Id.*, p. 38:4-8. He claims that the BANA callers made "[s]mall talk" and never gave him their name or department. *Id.*, p. 38:19-25. After providing this description of BANA's calls, Mr. Shupe was asked if any of the calls differed from his description and responded, "I don't recall. Irrelevant. To the best of my knowledge, they were all pretty much the same." *Id.*, p. 39:9-12. He later agreed with the statement that for each call he terminated, there was some small talk before he hung up the telephone. *Id.*, p. 40:13-15. This deposition testimony forecloses any argument by the Plaintiffs that their failure to earlier allege that any of the calls was prerecorded was an honest mistake.

In fact, from the inception of this case, the Plaintiffs have taken issue not with the fact that BANA had employed prerecorded messaging, but with the fact that the calls were made using an autodialing system. This was fully illustrated in their motion seeking a declaration from the Court that the use of autodialing equipment violated the TCPA (Doc. 139). In the order denying such a declaration, the Court expressly noted that BANA alleged, and the Plaintiffs did not dispute, that "the calls

6

1   at issue in this case were not made using an artificial or prerecorded voice." (Doc.
2   155, p. 2). The foregoing clearly establishes that the Plaintiffs' allegation that BANA
3   used any artificial or prerecorded voice is an eleventh hour contrivance designed to
4   avoid summary judgment on their TCPA claim. As such, the allegation is not
5   appropriate for consideration in evaluating the pending motion.

6   In addition to the foregoing argument, the Plaintiffs assert once again that the
7   TCPA not only prohibits calls to residential lines using artificial or prerecorded voice
8   messages, but also calls made using an automatic telephone dialing system
9   ("ATDS"). *Response*, p. 10. The support for this argument, Plaintiffs contend, is
10  found in *Satterfield v. Simon and Schuster*, 569 F.3d 946 (9th Cir. 2009). In that
11  decision, the Ninth Circuit did indeed note that the Federal Communications
12  Commission had stated "that under the TCPA, it is unlawful to make *any call* using
13  an automatic telephone dialing system or an artificial or prerecorded message to any
14  wireless telephone number." *Id*. at 953. It is apparent, however, that the court, by
15  referencing wireless telephones, was not discussing section 227(b)(1)(B) of the
16  TCPA, but section 227(b)(1)(A). Under the latter section, a cause of action exists
17  where (1) the defendant called a cellular telephone number; (2) using an automatic
18  telephone dialing system; (3) without the recipient's prior written consent." *Meyer v.*
19  *Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). In this
20  case, it is undisputed that BANA called the Plaintiffs' residential line and not a
21  cellular phone. That fact undermines the Plaintiffs' contention that BANA's use of
22

1  an ATDS violated the TCPA.  The use of such equipment is not prohibited when
2  calls are made to residential lines.  *See* 47 U.S.C. § 227(b)(1)(B).

3  Finally, the Plaintiffs contend BANA is subject to liability because "it's the
4  causing of a phone to ring that violates the TCPA." *Response*, p. 10.  The Plaintiffs
5  do not identify any statutory support for their argument, but contend that *Accounting*
6  *Outsourcing, LLC v. Verizon Wireless Personal Communications* supports their
7  assertion.  The Plaintiffs did not provide a citation for the *Accounting Outsourcing*
8  case, but a Westlaw search of all federal cases for a case by that name returns five
9  documents from a group of consolidated cases originating in the Middle District of
10 Louisiana.  In those cases, the plaintiffs sought damages under the TCPA and
11 Louisiana law after they had received unsolicited facsimile advertisements.
12 *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications*, 329
13 F.Supp.2d 789, 793 (M.D.La. 2004).  However, at least insofar as the Court can
14 discern, none of the five orders available online support the notion that a TCPA
15 plaintiff need only establish that his phone rang in order to impose liability.  *See id.*;
16 2007WL7087615 (M.D. La. August 2, 2007); 2006WL2669063 (M.D.La. August 3,
17 2006); 2006WL2669066 (M.D.La. March 6, 2006); 294 F.Supp.2d 834 (M.D.La.
18 2003).

**C. State Law Claims**

**1. Jurisdiction**

The remaining two causes of action of the assert violations of Arizona state laws. The Plaintiffs do not allege that this Court has diversity jurisdiction over this action. Plaintiffs allege that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and 1441(c). The federal supplemental jurisdiction statute provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

A district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction
>
> (3). the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Having recommended dismissal of the federal TCPA claim, it is within the Court's discretion to decline to exercise supplemental jurisdiction over the state law claims against the moving Defendants pursuant to 28 U.S.C. § 1367(c). *See San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 478 (9th

1 Cir.1998). However, as discussed below, the Court recommends that the District
2 Court grant summary judgment on the Arizona claims, and recommends that judicial
3 economy would be best served if the District Court retains jurisdiction.

### 2.     A.R.S. § 44-1282

BANA argues summary judgment should be granted because the calls made by BANA are permitted under A.R.S. § 42–1282 and, additionally, the Arizona law applies only to intrastate calls, and there is no evidence that BANA made any intrastate calls. Section 42-1282 prohibits solicitors from initiating telephone calls to numbers entered in the national do-not-call registry, but expressly allows calls "that would be permitted by federal law or regulation relating to interstate telephone solicitation." A.R.S. § 44–1282(A) & (B). As BANA correctly asserts, since the calls in question are not proscribed by the TCPA, they are not unlawful under the Arizona statute. Because the calls are not unlawful, there is no need to determine if a factual dispute exists as to the origin of the calls. Accordingly, the Magistrate Judge recommends that the District Court grant BANA's motion for summary judgment on the Plaintiffs' claim under A.R.S. § 44–1282.

### 3.     Invasion of Privacy

BANA contends that the calls in question were not "highly offensive to the ordinary man" and thus cannot serve to impose liability for the tort of invasion of privacy. The Arizona Supreme Court has recognized the invasion of privacy torts laid out in the Restatement (Second) of Torts § § 652A et seq., which include the tort of intrusion upon seclusion, *see Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz.

335, 338 (1989), and at least one Arizona Court of Appeals decision has applied the tort of intrusion upon seclusion. *See Hart v. Seven Resorts Inc*., 190 Ariz. 272, 279 (Ct.App.1997). The Arizona courts generally follow the Restatement in the absence of Arizona authority on an issue. *Reed v. Real Detective Publ'g. Co.*, 63 Ariz. 294 (1945); *Campbell v. Westdahl*, 148 Ariz. 432 (Ct.App.1985). Consequently, we look to the Restatement for guidance regarding how the Arizona Supreme Court would resolve the Plaintiffs' claim.

The Restatement describes the tort of intrusion upon seclusion as follows: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Hart*, 190 Ariz. at 279 (citing Rest.(2d) Torts § 652B (1977)). The comments to the Restatement further define the contours of the tort; there is no liability unless the interference with a plaintiff's seclusion is "a substantial one, of a kind that would be highly offensive to the ordinary reasonable man." Rest. (2d) Torts § 652B (1977), cmt d. Relevant here is the Restatement's comment that "when . . . telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence" and a plaintiff's privacy may be invaded. *Id*.

In support of their contention that BANA is not entitled to summary judgment on their invasion of privacy claim, the Plaintiffs cite two federal cases originating out of California. In the first, the District Court for the Southern District of California

11

1 applied the standard enunciated in the Restatement (2d), and found the plaintiffs'
2 allegation that defendant had contacted them, in an attempt to collect a debt, 380
3 times over a seven month period, at a rate of five to ten times per day, despite
4 notifications that Plaintiffs were represented by counsel, adequately stated a claim for
5 intrusion upon seclusion. *Chaconas v. JP Morgan Chase Bank*, 713 F.Supp.2d 1180
6 (S.D. Cal. 2010). In another, the same district court denied a defendant's motion to
7 dismiss an invasion of privacy claim based on the plaintiff's allegations that the
8 defendant made continuous and numerous phone calls to collect a debt through an
9 automated dialing system even after the defendant was made aware that the plaintiff
10 was represented by counsel. *See also Hurrey–Mayer v. Wells Fargo Home Mortg.,*
11 *Inc.*, 2009 WL 3647632, at *2–3, 2009 U.S. Dist. LEXIS 103039, at *6–7 (S.D. Cal.
12 Nov. 4, 2009).

13 Here, the Plaintiffs have not presented evidence that would save their claim
14 for invasion of privacy. First, they allege that they only once informed the callers
15 from BANA that the calls were unwelcome. The Court notes that even that claim is
16 suspicious. BANA has produced unrebutted evidence that the first call to the
17 Plaintiffs, like most of the others, lasted one second. *DSOF*, ¶ 12. However, giving
18 Plaintiffs the benefit of the doubt, even assuming they spoke to a BANA
19 representative during that first call and informed them that the calls were unwelcome,
20 the Plaintiffs admit that they hung up on BANA during each of the ensuing calls.
21 Thus, even under the Plaintiffs' version of events, this case is quite unlike the cases
22 cited by the Plaintiffs. BANA was told once to stop calling and was never told that

1 the Plaintiffs were represented by counsel or were not the intended recipients of the
2 calls. Moreover, BANA's call log reflects that it made 48 calls over a four month
3 period. Even if the number is 56 as the Plaintiffs contend, that amounts to an average
4 of approximately one phone call every other day. *DSOF*, § 12. That number is far
5 short of the 380 calls made in *Chaconas* and the "continuous" and "numerous" calls
6 made in *Hurrey–Mayer*. Thus, on the record before the Court, the evidence
7 establishes that around 50 calls were made over a four month period and most of
8 them went unanswered. The Plaintiffs have cited no common law authority that
9 would support a finding that the calls were made with such persistence and frequency
10 as to amount to a course of hounding the Plaintiffs such that they would be
11 considered highly offensive to a reasonable person. Accordingly, the Court
12 recommends that the District Court grant BANA's motion for summary judgment on
13 the Plaintiffs' claim for invasion of privacy.

14 **IV. Recommendation**

15 Based on the foregoing, the Magistrate Judge **recommends** that the District
16 Court, after its independent review, **grant** Defendant Bank of America, National
17 Association's Motion for Summary Judgment (Doc. 129).

18 The parties shall have 14 days from the date of service of a copy of this
19 recommendation within which to file specific written objections with the District
20 Court. See 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules
21 of Civil Procedure. Thereafter, the parties have 14 days within which to file a
22 response to the objections. Replies shall not be filed without first obtaining leave to

do so from the District Court. If any objections are filed, this action should be designated case number: CV 13-019-TUC-JGZ. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 21st day of January, 2015.

Jacqueline M. Rateau
United States Magistrate Judge